HENRY AMEY, PLAINTIFF, *v.* THE MAYOR, ALDERMEN, AND CITI-
ZENS OF ALLEGHENY CITY:

In 1848, the Legislature of Ohio incorporated certain of its citizens under the name of the Ohio and Pennsylvania Railroad Company; and in 1849, the Legislature of Pennsylvania incorporated the same company by the same style, and adopted the act of Ohio.

In 1849, the Legislature of Pennsylvania exempted from taxation, except for State purposes, the certificates of loan theretofore issued or which might be thereafter issued by the city of Allegheny (amongst others) in payment of a subscription to the capital stock of the Pennsylvania Railroad Company, or to the capital stock of the Ohio and Pennsylvania Railroad Company.

The charter of the last-named company had previously authorized the city corporation of the city of Allegheny to subscribe for an amount of the stock not exceeding two hundred thousand dollars.

By virtue of two ordinances, and a supplement thereto, two hundred bonds of one thousand dollars each, with coupons attached, were executed and delivered to the company. They bore date January 1, 1850.

On the 14th of April, 1852, another act was passed by the Legislature, providing "that the city of Allegheny is hereby authorized to increase its subscription to the capital stock of the Ohio and Pennsylvania Railroad Company to an amount not exceeding the subscription heretofore made by said city, &c.; provided no bonds for the payment of stock subscribed, as aforesaid, shall be issued of a less denomination than one hundred dollars."

On the 19th of June, 1852, an ordinance was passed authorizing the mayor to subscribe for four thousand shares, (equal to two hundred thousand dollars,) &c., &c. This ordinance was never recorded; but the stock was subscribed for and the bonds issued.

On the 8th of May, 1850, the Legislature had passed an act limiting the debt of the city of Allegheny to $500,000, exclusive of the first subscription above mentioned. The debt of the city had reached that limit prior to the second subscription.

These acts of the Legislature, mentioned in the first part of this note, conferred authority on the corporation of the city of Allegheny to issue certificates of loan, otherwise called bonds, with coupons, as was done, to pay for its first and second subscriptions to the capital stock of the Ohio and Pennsylvania Railroad Company.

The limitation in the act of 8th of May, 1850, only meant that the city council, by its own authority, should not go into debt to a greater amount than $500,000. But this restriction was not binding on the Legislature.

The circumstance that the ordinance of 19th of June, 1852, was not recorded or published, does not invalidate the bonds. The charter of the city requires that those ordinances only which were passed under the seventh section of the charter should be recorded and published. The ordinance in question did not belong to that class.

This court adopts the judgment of the courts of Pennsylvania, that the above acts of the Legislature were not inconsistent with the Constitution of the State.

THIS case came up on a certificate of division in opinion between the judges of the Circuit Court of the United States for the western district of Pennsylvania.

The nature of the case is explained in the head note of this report, and fully set forth in the opinion of the court.

It was submitted on printed arguments by *Mr. Knox* for the plaintiff, and *Mr. Loomis* for the defendant.

*Mr. Knox* divided his argument into the following heads:

1. The words of the acts.
2. The purpose of the acts.
3. The interpretation put upon them by the Legislature.

Under the first head, he contended that the power to issue bonds was included in the power to subscribe to the capital stock; and referred to Commonwealth v. M. Williams, 1 Jones, 62.

> Carr v. Le Feure, 3 Carey, 413.
> McMasters v. Reed's Executors, 1 Grant's Cases, 36.
> Commonwealth ex rel Hamilton v. Pittsburg, Pittsburg Legal Journal, March 12, 1860, No. 35, pp. 274—276.

The popular use of the word "subscribe" corresponds with the grammatical and legal meaning, as stated in the above cases. Allegheny city has placed this interpretation upon them, and no different construction ought now to be admitted.

The words "certificates of loan" and "bonds" are considered identical by several acts of the Legislature, viz: 21st of April, 1851, 18th April, 1853, May 8, 1854.

2. The purpose of the acts.

The purpose was to enable the city of Allegheny to contribute by the use of its credit to the making of this road, and bonds, with coupons, were the only kind of securities that would serve the purpose of the act.

> 2 Peters, 661; 3 Wheaton, 388.

3. The interpretation placed on the act by the Legislature.

The act of May 8, 1850, passed after the issue of the first set of bonds, recognised them as a debt of the city.

The two first points relate to the act of 1852, as well as to the first act.

*Mr. Loomis* confined his argument to the following propositions, viz:

1. Whether the several acts of Assembly mentioned in the case stated conferred any authority on the corporation of the city of Allegheny to give bonds, with coupons, as stated in the cause.

2. Whether such bonds and coupons are null and void by reason of such want of authority.

3. Whether they are null and void for any other irregularity connected with their issue.

Upon the first point, *Mr. Loomis* expatiated upon the unreasonableness and injustice of binding the property of one man by the will of another, which was not sanctioned by the Constitution of Pennsylvania.

The only power given to the corporation was to subscribe, which might, perhaps, have given the railroad company a right of action. Under the city charter, no authority to issue the bonds existed; by the delegation of the authority to subscribe, none was conferred. The plaintiffs took the title at their peril. The public interest requires that corporate functionaries should be kept strictly within the pale of their authority and duty.

[*Mr. Loomis* then cited a number of authorities in support of these positions. His argument upon the other points must be omitted for want of room. The above notice constitutes but a faint outline of the arguments of both counsel.]

Mr. Justice WAYNE delivered the opinion of the court.

This case has been sent to this court on a certificate of division of opinion between the judges of the Circuit Court for the western district of Pennsylvania.

The plaintiff has sued the mayor and aldermen and citizens of Allegheny city, in actions of debt, upon several coupons of bonds which were issued by that corporation, and made payable to the Ohio and Pennsylvania Railroad Company, in payment for two subscriptions, of two hundred thousand dollars each, to the stock of the latter.

It was agreed by the parties upon the trial of the cause to submit it for the opinion of the court upon a statement, in the nature of a special verdict, and that verdicts upon the coupons should be entered accordingly.

The judges, however, in their consideration of the case, differed in opinion on the following points: "Whether the several acts of Assembly recited in the case stated conferred any

authority on the corporation of the city of Allegheny to issue bonds with coupons, as had been done, or whether the same are altogether null and void, by reason of such want of authority, or for any other irregularity connected with their issue."

It is admitted that the bonds were issued and delivered in payment for subscriptions of stock to the Ohio and Pennsylvania Railroad Company; that they were made payable to that company or its order; that the company had negotiated them to raise funds to construct the road, and that the road had been completed in conformity with the conditions of the subscriptions of the defendants.

The parties agree that the subscriptions had been made by the authority of acts of the Legislature of the State of Pennsylvania, in conformity with the charter of the railroad company, and were intended to be in pursuance of resolutions and ordinances of the select and common councils of the city of Allegheny.

The mayor was first instructed to subscribe for four thousand shares of the capital stock of the Ohio and Pennsylvania Railroad Company, to be paid for in bonds, with coupons attached for interest, payable semi-annually, the bonds having twenty-five years to run. The railroad agreed to pay the interest upon the bonds until the completion of the road, or so much of it as may be adequate to pay the interest, and that the proceeds of the bonds were to be applied to the construction of the road from the city of Allegheny to the mouth of the Big Beaver river, about twenty-five miles. And to secure the city and the bondholders, it was stipulated, in addition to the legal obligations incurred in making the subscription, that the stock, with the interest, earnings, and dividends of the road, should be pledged to pay the interest, and finally to redeem the bonds. Accordingly two hundred bonds of $1,000 were prepared, and were delivered to the railroad company, on the 1st of January, 1850, and the city at the same time received a certificate of four thousand shares. The coupons now sued upon were a part of those which were attached to those bonds.

The second subscription was made in virtue of another act of the Assembly of Pennsylvania, and in compliance with a resolution of the city, dated June 19th, 1852. That act authorized the city to increase its subscription to the capital stock of the railroad company, to any amount not exceeding its first subscription, *upon the laws and conditions which had been prescribed for the first;* but it restrained the city from making an issue of bonds of a less denomination than $100. The act also exempts the stock from the payment of·any tax in consequence of the payment of any interest to stockholders, until the net earnings of the company shall realize six per cent. per annum on the capital stock. The city authorities passed an ordinance for this additional subscription, but it was not published in compliance with the charter of the city, nor was it recorded in the manner which it is said the charter requires the city ordinances to be. For those neglects, it is said the ordinance was null and void, and that the city had not the power to make the second subscription under the act of the Legislature. But the city bonds were issued, and the subscription was made. It is also objected that the ordinance was endorsed upon the bonds, without any proviso requiring the railroad company to pay the interest upon them according to its stipulation. But it is admitted that the road was built first from the city to the Big Beaver river, and afterwards completed to its termination on the western border of Ohio, and thence to Chicago.

The city continues to hold its stock in the railroad company. It has received five dividends from the·company—one of $14,000, another of $16,000, another of $12,000—which were retained by the company by the consent of the city, and had been appropriated to the payment of the coupons for interest; and that $4,000 of those dividends had been paid in cash, and others in stock. Prior to the city's second subscription, it appears that the debt of the city had become $500,000, the limit prescribed by an act of the Legislature. That act is, "that it should not be lawful for the councils of the city, either directly or indirectly, by bonds or certificates of loan of indebtedness, or by virtue of any contract, or by any means or device what

soever, to increase its indebtedness to a sum which, added to the existing debt, shall exceed $500,000, exclusive of the subscription of $200,000 to the Ohio and Pennsylvania Railroad Company."

It is admitted, also, that the stock of the city in the railroad company had been voted at all elections of it by order of the city, except in a single instance, when the city refused to vote. The city was incorporated on the 11th April, 1840, with all the powers and authorities then vested by law in the select and common councils of the city of Philadelphia.

We have given the agreed case of the parties in every particular in any way bearing upon the points about which the judges in the court below were divided in opinion, and will now consider them.

The subscriptions of the defendants were made under the acts of the 5th April, 1849, and that of the 14th April, 1852. The first permitted a subscription of $200,000, to be paid for by "certificates of loan." The second permitted the increase of it, to an amount not exceeding the first, without, however, having altered the manner in which the corporate credit of the city was to be used for the payment of the second subscription. We infer from the words of the act, and do not see how it can be otherwise, that it was to be paid for by the *same certificates of indebtedness* which the Legislature had directed to be issued and used for the payment of the first subscription. The act is, "that the city of Allegheny is hereby authorized to increase its subscription to the capital stock of the said Ohio and Pennsylvania Railroad Company to any amount not exceeding the subscription heretofore made by the said city, upon the terms and conditions prescribed in regard to said previous subscription; provided no bond for the payment of the subscription shall be issued of a less denomination than one hundred dollars." This proviso is merely an inhibition upon the city to use for the payment of the subscription any certificate of indebtedness less than $100; and the words "no bond for the payment of the subscription shall be issued," when considered in connection with the act authorizing the second subscription, that it should be made "upon the same terms and conditions

of the first," cannot be interpreted into a permission or direction of the Legislature, that the city might use in payment for the stock any other legal or commercial instrument than "*certificates of loan.*" Such certificates are well and distinctly known and recognised in the usages and business of lending and borrowing money, in the transactions of commerce, also, and for raising money upon the contract in them for industrial enterprises and internal improvements. They were formerly more generally known than otherwise as "certificates of loan," with certificates for interest attached, payable to the bearer at particular times within the year, at some particular place, being a part of the contract, from which they must be cut off to be presented for payment. But now, in their use, they are called bonds, with coupons for interest—a coupon bond—*coupon* being the interest payable separable from the certificate of loan, for the purpose of receiving it. But neither the instrument nor coupon has any of the legal characteristics of a bond, either with or without a penalty, though both are written acknowledgments for the payment of a debt.

Such certificates of loan have been resorted to for many years in the United States to raise money for internal improvements. They were as well known and used in Pennsylvania as elsewhere, and were permitted to be issued in that State, by just such enactments as those which authorized the city of Allegheny to subscribe to the capital stock of the Ohio and Pennsylvania Railroad Company. Such an issue was applicable to the subject-matter of legislation. The city solicited the State to be allowed to make the subscriptions. It was the policy of the State to grant the application. The subscriptions were made under the act of the 5th April, 1849, and that of the 14th April, 1852. The first permits a subscription of $200,000, which was to be paid for by certificates of loan. The act of the 14th April, 1852, allowed the increase of the subscription to an amount not exceeding the first, upon the same terms and conditions. It was the understanding of the Legislature, of the city, and of the railroad company, that the subscriptions were to be paid for by the corporate credit of the city by the issue of "certificates of loan." That appears

from the act of 1849, authorizing it, before the subscription was in fact made. That act provides, in anticipation of its being done, that the certificates of loan which shall hereafter be issued by the city of Allegheny in payment of any subscription to the Ohio and Pennsylvania Railroad Company, were to be exempt from all taxation, except for State purposes. The railroad company took from the city certificates of loan in payment of the subscriptions, sold them as such, and with the money built the road. Such a concurrence of contemporaneous action by all the parties interested in the subject-matter of legislation, proves that it was the intention of the Legislature that the authority given to the city to make the subscriptions to the railroad company, had been carried out just as it was meant to have been.

We answer, therefore, that the several acts of Assembly stated in the agreed case did confer authority on the corporation of the city of Allegheny to issue certificates of loan, otherwise bonds with coupons, as was done, to pay for its first and second subscriptions to the capital stock of the Ohio and Pennsylvania Railroad Company.

We will now inquire whether the bonds or certificates of loan which were issued are null and void " for any irregularity connected with their issue.".

It is said there were two irregularities which made them so. The first is, that the debt of the city had reached its limit of $500,000 prior to the second subscription. The second is, that the city ordinance authorizing the issue for the payment of the subscriptions was null and void, from not having been published in conformity with the charter of the city.

The first objection depends upon the proper construction of the act of 8th May, 1850, section 4, in connexion with the act of the 14th April, 1852, which authorized the second subscription. The first declares that the indebtedness of the city should not be made to exceed five hundred thousand dollars, exclusive of the subscription of two hundred thousand dollars to the railroad company ; and it is urged, that the act of 14th April, 1852, though it authorizes the city to make a second subscription of two hundred thousand dollars, does not permit

the city to increase its debt to a larger sum than seven hundred thousand dollars, to which it was limited by the first act of 1850. The objection has arisen from a misconception of the 4th section of the act of 1850. It provides that it shall not be lawful *for the councils of the city* of *Allegheny*, either directly or indirectly, or by bonds, certificates, or loans, or of indebtedness, or by virtue of any contract, or by any other means or device whatsoever, to increase the indebtedness of the said city, in a sum which, added to the existing debt, shall, taken together, exceed five hundred thousand dollars, exclusive of the subscription of two hundred thousand dollars to the Pennsylvania Railroad Company; meaning, obviously, that no increase of debt should be made by the councils beyond the sum of $500,000, but not intending that the Legislature might not authorize an increase of it beyond that amount, as it had previously done by authorizing the first subscription to the railroad company. The same political power which allowed the first subscription could, at a succeeding session of the Legislature, give authority to the city to make a second. Such authority was given by the act of the 14th April, 1852. The city councils could not under its charter have made either the first or second subscription without authority from the Legislature, *but by its charter it could contract debts for the purposes of its incorporation to a larger amount than* $500,000. When, then, the Legislature was called upon to authorize the city to make the first subscription, increasing its indebtedness two hundred thousand dollars, beyond what the city might have owed then for other purposes, it was thought prudent, as well for the protection of the citizens of Allegheny as for those who might purchase these certificates of stock with coupons, to declare that the councils of the city should not thereafter, by *virtue of their charter authority to contract debts*, by any device whatever, increase its amount to more than five hundred thousand dollars. And as it has turned out, judging from the attitude of the mayor, aldermen, and citizens of Allegheny in this suit, it must be admitted to have been upon the part of the Legislature of Pennsylvania a very commendable precautionary act of legislation.

Having thus disposed of the first irregularity imputed to the councils of Allegheny, in making their issue for the payment of the second subscription, we proceed to the second.

It is, that the ordinance of the city directing the issue for the payment of the second subscription had not been recorded within thirty days. It is admitted in the stated case that it had not been.

By the 8th section of the charter of the city of Allegheny, it is provided, that in order that a knowledge of the laws, ordinances, regulations, and constitutions of the city, authorized by the seventh section of the charter, may at all times be had and obtained, and the publications thereof at all times be known and ascertained, such and so many of them as shall not be published in one or more of the public newspapers published in the city, or in such other way as the select and common councils may direct, within fifteen days after these laws severally passed, &c., &c., and also recorded in the office for the recording of deeds, &c., &c., &c., within thirty days after these laws passed, &c., &c., shall be null and void.

Now, it does not require a very careful examination of the section to determine that it can have no bearing upon the ordinance directing the issue for the payment of the second subscription of the city to the Ohio and Pennsylvania Railroad Company, for in terms it is only applicable to ordinances, &c., *authorized by the 7th section of the charter*, and that did not permit such a subscription to be made, and paid for by the city stock, as the ordinance for that purpose was intended. It could only be made by the authority of the Legislature. In other words, the Legislature enlarged the powers of the councils of Allegheny, to do what it could not do by charter. Besides, if the section was not limited to such ordinances, &c., &c., as are *authorized by the 7th section of the charter*, and those words were not in it, it could have no application to an ordinance of the city passed for a special purpose to carry out an act of the Legislature, outside of the charter, as was the case here. We have determined that the acts of the Legislature have been carried out by the city in the way they should have been done  Neither the ordinance, nor the stock issued by

the city, are deficient in any substantial particular. The latter has every formality of the corporation to give them currency. They were .circulated for ten years, and were constantly acknowledged by the city, as its bonds, for the purposes for which they were issued. They are now in the hands of *bona fide* transferees, to whom they must be paid according to their terms. It would be inequitable, if the city could repudiate them at all, and more especially, if that were allowed to be done upon the ground of any fault in the corporation in their issue. But we will not enlarge further upon the case. The points of objection of which we have treated have already been before this court in several cases, and they are worthy of perusal. See the cases of the Commissioners of Knox County, Indiana, *v.* Wallace, 21 Howard, 239; 3 Zabriskie *v.* Cleveland, Columbus, and Cincinnati Railroad Company, 23 Howard, 381.

We have not, in our treatment of this certified division of opinion, discussed that position of the learned counsel who argued it for the defendant, that the acts of the Legislature of Pennsylvania, authorizing the issue of the certificates of loan, were unconstitutional.

Agreeing with him in the main, as to the foundations upon which the correctness of legislation should be tested, and the objects for which it ought to be approved, we cannot, with the respect which we have for the judiciary of his State, discuss the imputed unconstitutionality of the acts upon which the subscriptions were made to the Ohio and Pennsylvania Railroad Company; it having been repeatedly decided by the judges of the courts of Pennsylvania, including its Supreme Court, that acts for the same purposes as those are, which we have been considering, were constitutional.

We shall order it to be certified, that the issue of bonds with coupons, in the case stated, are not null and void, but that it was done under the authority of constitutional acts of the State of Pennsylvania, in the case stated; and further, that they are not null and void for any irregularity connected with that issue by the city of Allegheny.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the western district of Pennsylvania, and on the point or question upon which the judges of the said Circuit Court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court that the issue of bonds with coupons, in the case stated, are not null and void, but that it was done under the authority of constitutional acts of the State of Pennsylvania, in the case stated; and further, that they are not null and void for any irregularity connected with that issue by the city of Allegheny. Whereupon it is now here ordered and adjudged that it be so certified to the said Circuit Court.