STATE OF MINNESOTA, *ex rel.* L. T. Lawton and others, *vs.* DISTRICT
.COURT OF RAMSEY COUNTY.

August 8, 1890.

**Certiorari—Local Assessments.**—A writ of *certiorari* will not lie before
the entry of judgment, to review proceedings in district court in the mat-
ter of special assessments against real property alleged to have been bene-
fited by the improvement of a street.

**St. Paul—Street Grades.**—*Obiter dictum.* The grade lines of the streets of
the city of St. Paul must be established as provided in section 1, tit. 3,
*c.* 7, of the charter, before the city council has power to make an order
for the grading thereof, under the provisions of sections 2, 7, tit. 1, *c.* 7.

*Certiorari.*

*S. L. Pierce*, for relator.

*O. E. Holman*, for respondent.

COLLINS, J.[1]   Writ of *certiorari*, granted on the *ex parte* applica-
tion of the petitioner, and directed to the district court for Ramsey
county.   From the return made to the writ it appears that in the
matter of special assessments for the improvement of one of the
streets of the city of St. Paul, proceedings were had under and by
virtue of section 39, tit. 1, *c.* 7, of the city charter, (Sp. Laws 1874,
*c.* 1,) which resulted in an order of the court overruling objections to
the levy filed by the owners of the property against which assess-
ments had been made, and directing judgment in favor of the city.
The object of the writ herein is to review the proceedings and order.
No judgment has been entered in accordance with its terms, or other-
wise, and for this reason, upon the ground that the writ was improvi-
dently and prematurely issued, the respondent moves that it be
quashed.

We are of the opinion that the motion should be granted.   The
statute (Gen. St. 1878, *c.* 63, § 1) confers upon the supreme court
the power to issue writs of this nature to all courts of inferior juris-
diction, in furtherance of justice, but the power can only be exercised

[1] Mitchell, J., took no part in this case.

when *certiorari* is the proper method of removal, and of course at a proper time in the proceedings. In this state *certiorari* is employed strictly as in the nature of a writ of error, its legitimate office being to review and correct decisions and final determinations of inferior tribunals, not to divest them of the right of terminating the proceedings. *Grinager* v. *Town of Norway*, 33 Minn. 127, (22 N. W. Rep. 174.) It was held in *State* v. *Weston*, 23 Minn. 366, and again in *State* v. *Noonan*, 24 Minn. 124, that *certiorari* would not lie to remove from a district court a criminal case before judgment, for the purpose of obtaining a review of an intermediate ruling or order made therein. In both of these cases the conclusion was rested upon a ground not assignable in this,—that the statute had provided a specific way for obtaining a review of such rulings as might be made upon a trial, ample, adequate, and hence exclusive. While no such reason can have application or be urged here, much that was said *arguendo* in the *Noonan Case*, as to the mischievousness and embarrassment which would arise if *certiorari* were permitted at every stage of a criminal case, has force when considering a motion to quash a writ of *certiorari* issued before judgment in proceedings to levy and collect special assessments against property alleged to have been benefited by an improvement. Judgment has not been, and may not be, entered against the property, and until this is done—until there is a judgment to affirm, modify, or reverse—the proceedings should not be removed from the district court. This is said to be the general practice in this country. Powell, App. Proc. 349.

Further consideration is unnecessary, but the facts warrant us in an expression of our views upon the merits. The order of the council of which relators complain was in words as follows: "Improve Lawton street from Grand avenue to Oakland street, in said city, by constructing a wooden stairway, and grading and sodding said Lawton street to conform with said stairway." The charter (section 1, tit. 3, *c.* 7) directs the council to cause the establishment of grade lines, accurate profiles of which are to be kept and filed. It also (section 1, tit. 1, *c.* 7) confers upon the corporation the power to levy assessments for local improvements, either upon property fronting on the same or upon that which may be benefited thereby. Such as-

sessments (section 2) may be made for grading, filling, etc., any street, and for keeping it in repair. If grading or other improvements, except sidewalks, are demanded, the council must first refer the proposition to the board of public works, and, unless approved by the board, the council cannot proceed with the improvement except by unanimous vote. Section 5. When an order is made by the council for the making of an improvement mentioned in section 2, save as excepted, the board of public works proceeds (section 7) to ascertain and assess the damages and compensation, and also to determine and assess the benefits. Having ascertained these, the board is then required (section 14) to apportion and assess the amount upon the real estate by it deemed benefited by the improvement, in proportion to the benefits. Thereafter the work is done by contract. Sections 23, 28. Now, in case the desired improvement is a sidewalk, the council may proceed, without reference to the views of the board of public works, (section 22,) to order the construction. The board assesses the necessary expense, but it must be apportioned in accordance with the number of lineal feet of real estate or lots of land on which it fronts, and not upon property which it may in fact benefit.

It is admitted herein that no grade had ever been established for the street upon which this improvement was ordered. It would seem somewhat remarkable if the streets of a city could be "graded," in the sense in which the word is used in municipal charters, and property holders compelled to bear the expense of the work, without a prior establishing of grade lines to which the street must be brought. And this becomes the more apparent when we consider the peculiar provisions of the charter (title 3, c. 7) in reference to a change of grade, from which it appears that compensation to those whose property is injured by a change of grade is contemplated. The grading provided for and anticipated in section 2 is that done in accordance with and with reference to some previously adopted plan and system, in which lines have been fixed, and profiles made a matter of record. The establishment of gradient lines by the council, under the direction of the city engineer, was a prerequisite to its right to make any order in reference to the grading of the street, and

this view is not affected by the fact that, owing to the natural obstacles, no grade could be made which would render the street passable for animals and vehicles. That fact might be worthy of consideration when passing upon the propriety of the improvement; but the street was a public one, in which the pedestrian had the right to pass, and some right to have opened and in order.

Finally, as to the claim made that part of the improvement described as the wooden stairway could be considered as a sidewalk, we need but to say that it was not. In case of walks, the cost of construction must be assessed against the real property fronting thereon. Here the board proceeded against lots lying elsewhere, and which it judged were benefited thereby. It was well said in *Sewall* v. *City of St. Paul,* 20 Minn. 459, (511,) that "the authority of municipalities to impose burdens of any character upon persons or property is wholly statutory, and, as its exercise may result in a divestiture and transfer of property, it must be clearly given, and strictly pursued."

Writ quashed.