ALLEN et al. v. CITY OF DAVENPORT.

CITY OF DAVENPORT v. ALLEN et al.

(Circuit Court of Appeals, Eighth Circuit. July 23, 1904.)

Nos. 1,974, 1,990.

**1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT FOR STREET IMPROVEMENT —JURISDICTION TO MAKE UNDER IOWA STATUTE.**

Under Acts 25th Gen. Assem. Iowa, c. 7, p. 18, which applies to cities under special charter, and provides that all street improvements shall be made by contract, let to the lowest bidder, after advertising and secured by a bond from the contractor, a valid contract is a jurisdictional pre-requisite to the exercise by the city of the power conferred to make a special assessment on abutting property of the cost of paving a street.

**2. SAME—CURATIVE STATUTE.**

Code Iowa 1873, §§ 478, 479, provide for suits by municipal corporations to enforce a lien upon abutting property for the cost of street improve-ments, and that "in any such proceeding, where the court trying the same shall be satisfied that the work has been done or materials furnished, which, according to the true intent of the act, would be properly charge-able upon the lot or land through or by which the street * * * may pass, a recovery shall be permitted, or a charge enforced, to the extent of the proper proportion of the value of the work or materials which would be chargeable on such lot or land, notwithstanding any informality, ir-regularity, or defect in any such municipal corporation or its officers." *Held*, that the purpose of such provision was to prevent property owners from taking advantage of technical defenses, when the evidence shows that the municipality has exercised its power in substantial conformity with law, but that it did not authorize recovery by a city for the cost of paving done under a contract which was wholly void, as beyond its con-stitutional power, and which, as had been adjudged by the Supreme Court of the state, created no obligation on its part, and conferred no authority upon it to make a special assessment against abutting property for the cost of the work done thereunder.

**3. RES JUDICATA—MATTERS CONCLUDED BY JUDGMENT—DEFENSE NOT PLEADED.**

After a city had let a contract for the paving of a street, owners of property abutting thereon commenced a suit to enjoin the work and the levying of any special assessment on their property therefor, alleging the invalidity of the contract. No preliminary injunction was issued, and the contractor proceeded to do the work, and the city paid for it, and made an assessment therefor against the plaintiff's property. It was finally determined in the suit by the Supreme Court of the state that the con-tract was wholly void, as beyond the constitutional powers of the city, and conferred no authority upon it to make the assessment, and in accordance with its mandate the enforcement of such assessment was enjoined by a final decree. *Held*, that the suit was, in effect, one to prevent a cloud being cast upon the title to plaintiffs' property by the anticipated assess-ment, and that the decree therein was a bar to a subsequent suit by the city to enforce a lien thereon against the property on a quantum meruit under a curative statute giving it such right, where an assessment was invalid because of defects or irregularities in the proceedings, since such right, if it existed, was a complete defense to the prior suit, and should have been pleaded therein.

Hook, Circuit Judge, dissenting.

---

¶ 2. Power of the Legislature to pass curative statutes, see note to Steele County v. Erskine, 39 C. C. A. 180.

132 F.—14

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

On December 9, 1901, the city of Davenport exhibited its bill of complaint against William Russell Allen, Elizabeth L. Donaldson, Thomas Allen, George W. Allen, Annie L. A. Chauvenet, Alice N. A. Atwater, and Annie Russell Allen, who are the appellants in case No. 1,974, in the district court of Scott county, state of Iowa. For convenience the city of Davenport will hereafter be termed the "plaintiff" and the appellants in case No. 1,974 will be termed the "defendants." The case was subsequently removed to the Circuit Court of the United States for the Southern District of Iowa. The bill of complaint which was so filed by the city contained two counts. That count on which a recovery appears to have been allowed, charged, in substance, that on or about December 1, 1896, the city of Davenport graded, curbed, and paved a part of Eddy street and the Davenport and Le Claire Road, through lands belonging to the defendants, and furnished the labor and material for such improvement, and that the reasonable value of such labor and material and such improvement was the sum of $14,675.26, no part of which had been paid, although said sum was long past due; that the land so owned by the defendants through which a road had been graded, curbed, and paved was the northeast quarter and the southeast fractional quarter of section 30 in township 78 north, of range 4 east of the fifth principal meridian; that said improvement was authorized by law, and was such an improvement as was contemplated by the law under which the city acted, and that under said law the cost of said improvement became a lien on the lands abutting on said improvement to the extent of 150 feet on each side thereof from the time of the commencement of said improvement, and continued to be a lien until the same was paid; and that by said law the plaintiff was entitled to 10 per cent. interest on the cost of said improvement and collection fees for collecting the same. The city accordingly prayed judgment against the defendants, and each of them, for the sum of $21,890.61, with interest at the rate of 10 per cent. from January 2, 1902, and for costs, including 5 per cent. of the amount of said judgment, to defray the expense of collection; and that the amount of said judgment might be decreed to be a lien upon the property of the defendants above described abutting on Eddy street and the Davenport and Le Claire Road from the date of the completion of the work on December 2, 1896, until paid; also that a special execution might be issued for the sale of said premises, or so much thereof as was deemed necessary to satisfy said judgment, interest and costs.

The laws of the state of Iowa, which, as the city contends, authorized it to do the work in controversy, and on which it predicates its right to recover the cost of the work in this proceeding, are section 19 of article 7 of the charter of the city of Davenport, chapter 7, p. 18, of the Acts of the Twenty-Fifth General Assembly of the state of Iowa, which appears to have been approved on April 28, 1894, and sections 478 and 479 of the Code of Iowa for 1873, which latter sections are now found in McClain's Revised Code of Iowa of 1888, in volume 1, at pages 164, 165, §§ 649, 650.

Section 19 of the city charter confers authority to improve streets in the following language:

"The city council shall have power by ordinance to levy and collect a special tax on the owners of lots on any street, lane, avenue, alley or block or the side of a block fronting or lying on any alley or part of any street, lane, avenue or alley according to their respective fronts owned by them, for the purpose of paving or grading the sidewalks; grading, paving or macadamizing such streets, lanes, avenues and alleys or parts thereof and for lighting the same, on being petitioned so to do by the owners of more than one half the property so to be taxed."

Chapter 7, p. 18, of the Acts of the Twenty-Fifth General Assembly of the state of Iowa, so far as it is deemed essential to quote the provisions of that act, are as follows:

"Section 1. That all cities in this state organized and existing under special charter, and all cities having a population of 5,000 or over, shall have all the powers and be subject to the provisions of this act.

"Sec. 2. When the council of any such city shall direct the paving and curb-

ing of any street, or streets, or the construction of any sewers, such council, or the board of public works, in case such board shall exist, shall make and enter into contracts for furnishing labor and materials, and for the curbing, and paving the surface with any material, composition, patented or otherwise, or sewering, as the case may be, either for the entire work in one contract, or for parts thereof in separate and specified sections, as to them may seem best.

"Sec. 3. All such contracts shall be made by the council or the board of public works, when such board shall exist, and shall be made with the lowest bidder, or bidders, upon sealed proposals, after giving public notice thereof for not less than ten days in at least two newspapers of said city, which notice shall state as nearly as practicable the extent of the work, the kind of materials to be furnished, when the work shall be done, and at what time the proposals shall be acted upon.

"Sec. 4. Each contractor shall be required to give bond to the city, with sureties to be approved by the council, or by the board of public works, where such board shall exist, for the faithful performance of the contract, and the council or such board, shall have power to institute suit in the name of the city to enforce all such contracts."

Sections 478, 479, of the Code of Iowa of 1873, are as follows:

"478. Each municipal corporation may, by a general ordinance, prescribe the mode in which the charge on the respective owners of lots or lands, and on the lots or lands, shall be assessed and determined for the purposes authorized by this chapter; such charge, when assessed, shall be payable by the owner or owners at the time of the assessment personally, and shall also be a lien upon the respective lots or parcels of land from the time of the assessment. Such charge may be collected and such lien enforced by a proceeding in law or in equity, either in the name of such corporation, or of any person to whom it shall have directed payment to be made. In any such proceedings, where pleadings are required, it shall be sufficient to declare generally for work and labor done, and materials furnished on the particular street, alley or highway. Proceedings may be instituted against all the owners or any of them, to enforce the lien against all the lots or land, or each lot or parcel, or any number of them embraced in any one assessment, but the judgment or decree shall be rendered separately for the amount properly chargeable to each. Any proceedings may be severed, in the discretion of the court, for the purpose of trial, review or appeal.

"479. In any such proceeding, where the court trying the same shall be satisfied that the work has been done, or materials furnished, which, according to the true intent of the act, would be properly chargeable upon the lot or land through or by which the street, alley or highway improved, repaired or lighted, may pass, a recovery shall be permitted, or a charge enforced, to the extent of the proper proportion of the value of the work or materials which would be chargeable on such lot or land, notwithstanding any informality, irregularity, or defect in any such municipal corporation or any of its officers. But in such case the court may adjudge as to costs as may be deemed proper, and in cases where an assessment shall have been regularly made, and payment shall have been neglected or refused at the time when the same was required, any municipal corporation may be entitled to demand and recover, in addition to the amount assessed and interest thereon at ten per cent. from the time of the assessment, five per cent. to defray the expense of collection, which shall be included in any judgment or decree which may be rendered. The provisions and powers conferred in this chapter from section four hundred and sixty-five to section four hundred and seventy-nine, inclusive, shall apply to cities acting under special charters."

The record in the case discloses the following facts, which are not denied: On June 5, 1896, a resolution was adopted by the city council of the city of Davenport directing that Eddy street and the Davenport and Le Claire Road in said city, for a distance of 6,680 feet to the city limits, be curbed with a curb of cement; that the road be excavated and paved with a paving brick of the best quality; that the work be done according to plans and specifications for such improvement to be prepared by the board of public works; that the work be completed on or before November 1, 1896; that the board of public works publish a notice inviting sealed proposals for doing the work; that such

proposals be received up to June 30, 1896, and that the board of public works cause them to be opened at that time, and make such a report to the council in relation to the improvement as it deemed proper. Acting under this resolution, the city subsequently, on September 4, 1896, entered into a contract with the Flick & Johnson Construction Company for the improvement of the street as provided in the resolution. By the terms of this contract the city obligated itself to pay for the work in money, 75 per cent. of which was to be paid on monthly estimates as the work progressed and the remaining 25 per cent. of the cost within 30 days after the street was completed and accepted.

On September 12, 1896, the defendants in this action filed a bill of complaint in the district court of Scott county, Iowa, against the city of Davenport and the Flick & Johnson Construction Company, alleging, among other things, that the contract in question was void, for the reason that by its terms the city had assumed a liability in excess of the liability which it was authorized to incur under the Constitution of the state of Iowa, and praying that the construction company be enjoined from doing the work, and that the city be enjoined from attempting to assess against the defendants, or to collect from them, any part of the cost of the work. No injunction appears to have been awarded by the court to which this bill was addressed, and the work was proceeded with by the construction company, and completed on December 2, 1896. On February 3, 1897, before there had been a final hearing or decree on the aforesaid bill, the cost of the work that had been done was levied and assessed as a special tax against the property of the defendants, the assessment being at the rate of $2.35 per front foot, or in the aggregate the sum of $14,675.26. When this assessment was made, the defendants to this action filed a supplemental bill in the case which was then pending against the city, and, in addition to the relief prayed for in their original bill, asked that the city be enjoined from attempting to enforce the assessment that had then been made against their property, on the ground that the assessment was void. The case which was thus brought by the defendants in this action against the city and the Flick & Johnson Construction Company came on for trial before the district court of Scott county, Iowa, and a decree was entered by that court dismissing their complaint on March 1, 1897. From this decree the defendants appealed to the Supreme Court of the state of Iowa. On December 17, 1898, the Supreme Court handed down a decision on the appeal, by which it reversed the decree of the lower court, holding that the contract which was entered into between the city of Davenport and the Flick & Johnson Construction Company was void for the reason that by entering into that contract the city incurred an indebtedness in excess of what it could lawfully incur under the Constitution of the state of Iowa. It also held that the assessment levied by the city on February 3, 1897, to procure funds with which to reimburse itself for the cost of the work which it had at that time paid was also invalid, and that the lower court should have so adjudged. Allen v. City of Davenport, 107 Iowa, 90, 111, 77 N. W. 532. On the return of the case to the lower court the city obtained leave to file an amendment to its answer. By the amendment the city set up, by way of counterclaim, practically the same cause of action which is stated in the case at bar; that is to say, it asserted a right to recover from the defendants the reasonable cost of the construction of the road through their property in virtue of the provisions of law hereinbefore quoted, notwithstanding the fact that the contract under which the work was done as well as the assessment that had been made had been adjudged to be invalid and void by the Supreme Court of the state. The defendants thereupon filed a motion to expunge the counterclaim, and have a decree entered in conformity with the mandate of the Supreme Court. The lower court overruled this motion, declining to strike out the counterclaim. A second appeal was thereupon taken to the Supreme Court of Iowa, which court again reversed the decision of the lower court, holding that the lower court had erred in permitting the amendment. Vide Allen v. City of Davenport (Iowa), 87 N. W. 743. After the announcement of the decision on the second appeal, and on January 14, 1902, the lower court entered a final decree in favor of these defendants, wherein it was adjudged, among other things, that the contract which was entered into between the city of Davenport and the Flick & Johnson Construction Company in June, 1896, for the

construction of the road in question, was null and void; that the assessment subsequently made against the defendants on February 3, 1897, in the sum of $14,675.26, as their proportion of the cost of constructing the road, was likewise null and void, and that the city be perpetually enjoined and restrained from proceeding to collect the assessment levied against the defendants for the doing of the work, and that it be enjoined from selling the defendants' land, or any part of it, under or by virtue of said assessment, to pay the cost of the improvement; also that the city be enjoined from paying the principal of any bonds that had been theretofore issued by the city to obtain the means wherewith to pay the cost of the improvement.

The present action appears to have been brought about a month previous to the rendition of the final decree last mentioned, but subsequent to the announcement of the decision of the Supreme Court of Iowa on the second appeal.

On the trial of the case at bar in the Circuit Court of the United States for the Southern District of Iowa that court granted the relief prayed for by the city; that is to say, it adjudged that the city have and recover from the defendants the sum of $14,675.26, with 6 per cent. interest thereon from February 3, 1897, when the city made its assessment, and that the sum aforesaid, together with the accrued interest, constituted a lien on the defendants' property, which lien should relate back to September 1, 1896, and that the defendants' property, or a certain part of it, be sold to satisfy the amount of the debt and accrued interest if it was not paid within 30 days. Both parties have appealed from this decree, the defendants below on grounds which will sufficiently appear in the opinion. The city prosecutes an appeal because it was denied interest at the rate of 10 per cent., which it claims should have been allowed in place of 6 per cent., and because the lower court refused to allow the city the sum of 5 per cent. on the amount of the judgment to defray the expense of collection.

F. N. Judson, Albert Arnstein, and Hamilton Grover (W. M. Chamberlain, on the brief), for Allen et al.

C. M. Waterman, E. M. Sharon, and Henry Thuenen, Jr., for city of Davenport.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellants—that is to say, William Russell Allen and others —who will be hereafter termed the "defendants," contend that the city of Davenport was not entitled to a decree charging their property, as it was charged, with a lien for the cost of paving and curbing the street in controversy, because it was adjudged by the Supreme Court of Iowa in the suit brought by them against the city to enjoin the prosecution of the work that it was done under color of a contract which the city had no power to make; also because it was adjudged in the same case that the contract under which the street was improved would not support an assessment against the defendants' property for the cost of the work, and that the assessment which was in fact made on February 3, 1897, was utterly void, and of no effect. It is a fact which cannot be gainsaid that the Supreme Court of Iowa did hold that the contract between the city and the Flick & Johnson Construction Company was so utterly void that it did not impose a liability upon the city to pay the cost of the improvement which it had attempted to authorize, and that, in view of the invalidity of the contract, the city was powerless to levy an assessment against abutting property owners to reimburse itself for the cost of the work. In the

present proceeding, therefore, the city is in the attitude of seeking to compel the defendants to refund a sum of money which it has expended, but was under no legal obligation to expend. The theory of the city seems to be that, although the work was done under a void contract, which did not impose a liability on the city to pay for it, yet, as the doing of the work was probably beneficial to the defendants, and may have enhanced the value of their property to some extent, they may be compelled, in what is practically an action of assumpsit, to pay its reasonable value. This is tantamount to saying that a property owner in a city may be compelled to pay the cost of any street improvement which the city sees fit to make, to the extent that he is benefited thereby, irrespective of the question whether the municipality has pursued the forms of law and exercised its power to make the improvement in the prescribed way. Indeed, as we understand counsel for the city, it is broadly claimed that by virtue of sections 478 and 479 of the Iowa Code of 1873 (quoted above in the statement) a recovery may be had or a charge enforced against a property owner for a street improvement notwithstanding any failure on the part of the municipality to observe the forms of law in the exercise of its charter powers, and that to warrant a recovery in such cases the court need only be satisfied that the work has been done or materials furnished for a street improvement which would have been chargeable against the property owner if the municipality had exercised its powers in the right way. We have not been able to conclude that this is a reasonable construction of the two sections of the Iowa Code, or a construction which has been definitely approved by the courts of that state. It is obvious that, if it be the true construction of the two sections of the Code in question, then municipalities in the state of Iowa, in the matter of making street improvements, have been freed from all restraints that are imposed by their charters for the protection of property owners. According to the view contended for, if a municipality has a general power to grade and pave streets it may ignore any provision regulating the exercise of the power which it sees fit to ignore, since its failure to act in the prescribed way will be deemed merely an informality, or an irregularity, or a defect in procedure, which in no wise relieves property owners of their liability to pay the cost of the improvement. We naturally shrink from a construction of the statute which entails such consequences; nor do we think that there is anything in the language of the statute which requires such a construction. Section 478 deals in part with matters of practice. It aims to simplify proceedings in suits to enforce assessments for street improvements by providing that it "shall be sufficient to declare generally for work and labor done" without pleading in detail all the antecedent action that has been taken by the municipality to create the charge. This provision, however, that it shall be sufficient to declare for work and labor done cannot be understood as absolving the pleader from the obligation to prove on the trial that the municipality has in fact taken substantially all the steps which the law requires it to take to create a valid charge against the owners of abutting property. The statute deals with the subject of pleading, and, while it abbreviates the complaint in this class of cases, it does not lessen the measure of proof that is necessary to estab-

lish a liability. Section 479 appears to have been enacted to prevent property owners from taking advantage of defenses that are purely technical in suits brought against them to enforce assessments for street improvements, when the evidence shows that the power to make such improvements has been exercised by the municipality in substantial conformity with law. The Legislature foresaw that, when a municipality undertook to exercise its power to improve streets at the expense of abutting property owners, it might happen that the municipality, through ove. sight, would neglect to do every act in the precise form prescribed by its charter and ordinances, or to do it in the regular way, or at the right moment, and that there might be some defect of this nature in the course of procedure which would be in no wise prejudicial to the property owner. It accordingly declared that mere informalities or defects in the course of procedure where the municipality had exercised its powers in substantial conformity with law should not serve to prevent the enforcement of a charge against abutting property for its proportion of the cost of the improvement. Remedial legislation of this character, which is intended to deprive a taxpayer of technical defenses grounded on the fact that everything has not been done in the right form or in the prescribed order, although there has been a substantial compliance with the law, is quite common, and also very wholesome. But laws of this character should not be so interpreted as to deprive the property owner of his right to insist that his property shall not be charged with the cost of improving streets and making other improvements, unless there has been a substantial compliance with those provisions of the law that were enacted for his benefit and for his protection. It is an elementary doctrine that municipalities have no power to impose burdens on property for street and other local improvements unless the power to impose such burdens has been expressly conferred upon them by the Legislature. It is an exercise of the power of taxation, and this power belongs to the state, and is one of the highest attributes of sovereignty. When, therefore, the power is delegated to a municipal corporation, and laws are enacted prescribing the purposes for which it may be used, and the mode and manner of its exercise, these provisions of the law are mandatory, and should be carefully observed. French v. Edwards, 13 Wall. 506, 20 L. Ed. 702; Lyon v. Alley, 130 U. S. 177, 9 Sup. Ct. 480, 32 L. Ed. 899; Hager v. City of Burlington, 42 Iowa, 661; Warren v. Mayor, etc., of the City of Boston (Mass.) 62 N. E. 951; McCoy v. Briant, 53 Cal. 247; 2 Smith's Modern Law of Municipal Corporations, § 1242; Cooley on Taxation, page 656. A municipality cannot enforce a charge against the property of one of its citizens for local improvements unless it is able to show that it has proceeded according to law by taking substantially all of the initial steps which the law prescribes as necessary to create the charge. If it fails to do something which the law intended to be done for the protection of the citizen, and to prevent the imposition of an undue burden upon his property, an omission of this sort ought not to be looked upon as a mere informality or irregularity in the course of procedure, but should rather be regarded as a failure to do some necessary act which rendered its subsequent acts invalid and the charge unenforceable.

It is obvious, we think, that the city of Davenport had no power to assess a special tax against the property of these defendants for the improvement of the street or road which it resolved to improve, unless the work in question was done in pursuance of a contract. Sections 2 and 3 of chapter 7 of the Acts of the Twenty-Fifth General Assembly, supra, under which the city seems to have proceeded, expressly require that such work shall be done by contract, to be let to the lowest bidder after due notice. A general ordinance of the city that was in force when the work in question was undertaken contained provisions to the same effect, namely, that such work should "be done according to plans and specifications approved by the council under contract," and that a notice should be published for not less than 10 days inviting proposals for doing the work. Moreover, the city itself proceeded on the theory that such work could only be done in pursuance of a contract, and it accordingly invited proposals, and entered into a contract for the doing of the work with the Flick & Johnson Construction Company. This contract, however, was one in excess of the power of the city to either make or perform, and the attention of the city and the contractor was immediately called to the fact of its invalidity before any of the work was done. The city saw fit to ignore the suggestion that the contract was void. It proceeded with the work, and paid for it, and now calls upon the defendants for reimbursement; its claim being, apparently, that, while the contract was utterly void as between itself and the contractor, it was nevertheless valid in so far as the defendants are concerned, or at least that they should not be permitted to take advantage of its invalidity.

We have not been able to adopt that view of the case. The contract in question, whereby the city assumed an obligation to pay the entire cost of the work, and to pay it in money, was made in open violation of the Constitution of the state of Iowa, as the Supreme Court of that state has held (vide Allen v. City of Davenport, 107 Iowa, 90, 77 N. W. 532). The contract, being in excess of the power of the city, was not merely voidable, but absolutely void, creating no obligation that could be enforced as against either of the contracting parties. Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 48, 59, 11 Sup. Ct. 478, 35 L. Ed. 55; California Bank v. Kennedy, 167 U. S. 362, 367, 17 Sup. Ct. 831, 42 L. Ed. 198; De La Vergne Co. v. German Savings Institution, 175 U. S. 40, 59, 20 Sup. Ct. 20, 44 L. Ed. 65. A void contract is in fact no contract, since an instrument of that nature does not alter the relations previously existing between the contracting parties, nor will it serve as the foundation of any right. When such a void agreement is signed, the situation of the parties thereto remains the same as before it was executed. Now, it must be assumed, we think, that when the act to which we have heretofore referred declares that when a city resolves to improve one of its streets it shall enter into a contract for the doing of the work as a condition precedent to making the cost of the work a charge upon abutting property, it means a valid contract; that is to say, one which the

city can enforce, if need be, both for its own protection and for the protection of property owners. Persons whose property is liable to be charged for the cost of a street improvement have as much interest in the contract under which the work is done as the city itself, and the right to insist that it shall be entered into in such manner that it may be enforced against the contractor. We fail to perceive, therefore, how the mere signing of an agreement, which, as between the contracting parties, was utterly void, can be accepted as a sufficient compliance with the provisions of the statute that the work of improving streets must be done by contract or how such an agreement can serve as the foundation of a charge against the defendants' property, when it failed to create any rights as against the city.

In behalf of the city it is contended, however, that the Supreme Court of Iowa has taken a different view of this question, and has held that in virtue of section 479 of the Code of Iowa of 1873 a charge against abutting property for street improvements may be enforced although the proceedings taken to create the charge disclosed as grave defects as the proceedings in the case at bar. The decisions to which our attention has been particularly invited, and on which the lower court seems to have relied, are the following: City of Burlington v. Quick et al., 47 Iowa, 222; Dittoe v. City of Davenport, 74 Iowa, 66, 36 N. W. 895; City of Muscatine v. Chicago, Rock Island & Pacific Ry. Co., 79 Iowa, 645, 44 N. W. 909; Tuttle v. Polk & Hubbell, 92 Iowa, 433, 60 N. W. 733; Ottumwa B. & C. Co. v. Ainley, 109 Iowa, 386, 80 N. W. 510; City of Chariton v Holliday, 60 Iowa, 391, 14 N. W. 775; Fort Dodge Elec. Light & Power Co. v. City of Fort Dodge (Iowa) 89 N. W. 7.

In the first of these cases—City of Burlington v. Quick—it appears that the city council had ordered the improvement of a street and the levy of a special tax upon abutting property owners, and had directed the auditor of the city to ascertain the amount of such tax by dividing the whole expense by the number of front feet abutting the improvement, the result to be the assessment upon each front foot of property. It was claimed in that case, as it seems, that by an ordinance of the city the council was required to levy and assess the tax, and that the assessment was invalid because it had been made by the auditor instead of the council. It was held, however, that the duty performed by the auditor in the matter of apportioning the tax was merely clerical, and that, as the council had ordered both the levy and the assessment, and had directed the auditor how to apportion it, and as the apportionment had also been made in accordance with the provisions of a general ordinance on the subject, the assessment was in fact made by the council, and that the property owner had no right to complain.

The case of Dittoe v. City of Davenport was one in which the plaintiff had paid a tax for the construction of a sewer under protest, and brought an action against the city to recover the sum paid. He claimed that the charge which he had paid was illegal, for the reason that the resolution of the city council assessing it did not definitely describe the sewer, nor fix the gross amount of

the cost of the sewer, nor the amount per square foot to be assessed against adjacent property, as it should have done. He also claimed that no notice of the assessment had been given, and that he had had no opportunity to be heard in regard thereto. It appeared, however, that the street through which the sewer was to be constructed and its terminal points were described in the resolution; that the resolution assessing the tax also directed that it be assessed and levied on each lot, part of lot, or tract of ground in the sum and to the amounts shown by the plat of the city engineer; and it was admitted that this plat, to which reference was made, showed the amount to be assessed per square foot, the number of square feet in each tract, and the total assessment as respects each tract subject to be assessed for the sewer. It was accordingly held that the resolution of the council, in effect, adopted so much of the plat of the engineer as was referred to therein, and thereby furnished the means of obtaining precise knowledge of the amount of the tax assessed against each tract of land and each individual, and the total cost of the sewer, and that this was a substantial compliance with the law, and a sufficient compliance to sustain the validity of the charge. With reference to the other objection—that the taxpayer had been given no opportunity to be heard with reference to the assessment—the court said, in substance, that by demurring to the answer which was filed by the city, the plaintiff had admitted facts showing that the cost of the sewer had been assessed in all respects in conformity with law against each tract of land; that it appeared also that, if the plaintiff had been given an opportunity to be heard, it would have been of no advantage to him; and that the defect in the proceedings of which he complained did not affect the substantial merits of the case, nor entitle him to recover from the city the amount of the assessment which he had already paid.

In the case of Ottumwa B. & C. Co. v. Ainley, which was a proceeding to enforce a tax for a street improvement, it appeared that the city had advertised for proposals for the doing of the work, and had specified therein that the contractor should accept certificates to be issued by the city in full payment for the work and labor done in making the improvement. Only one bid for the doing of the work was received, and in this bid the contractor had inserted a provision that the city should guaranty the payment of a certificate which it was to issue against certain property lying on the west side of the street. The bid containing this provision was accepted by the city. It was claimed by the taxpayer that, inasmuch as the bid which was accepted by the city contained the aforesaid provision, and the same was in conflict with the terms of the resolution inviting proposals, the contract under which the work had been done was void, and that assessments subsequently made against abutting property could not be enforced. It appeared on the trial that the property lying on the west side of the street, with respect to which the city had guarantied the payment of the certificate which might be issued against it, was property which lay below ordinary high-water mark on the bank of a river, and there-

fore belonged to the state; that the city could not charge such property with a lien for the street improvement, but was itself responsible for the assessment against such property; that, in the absence of an express guaranty with respect to the charge against that property, the city would have been liable therefor as upon an implied guaranty and that for these reasons the acceptance of the contractor's bid with the provision contained therein with reference to a guaranty by the city did not affect the legality of the contract. The court further said that without the city's guaranty the cost of paving in front of the property in question would have been apportioned against other real property abutting on the improvement; that is to say, that the cost to other property owners would have been increased by the amount necessary to make the improvement in front of the tract in question; that there was nothing in the law to prevent a city, whose finances would admit of its so doing, from paying for an improvement like the one in question out of its general funds; and that at most all the case disclosed was a mere irregularity in the course of the proceedings which was not jurisdictional, but might be disregarded under section 479 of the Code of 1873. It is a notable fact that this case proceeds upon the assumption that, if the contract between the city and the contractor was in fact invalid, no charge for doing the work could be enforced against abutting property owners.

In the case of the City of Chariton v. Holliday, supra, it appeared that a general ordinance of the city, which was in force, provided the mode of assessing the cost of constructing sidewalks, and that a resolution had been adopted directing the building of a particular sidewalk, which resolution did not expressly provide the mode of assessment. It was held that the omission to prescribe the method of assessment in the resolution directing the construction of a particular sidewalk was a mere irregularity in view of the fact that a proper method of assessment was prescribed by the general ordinance, and that that method of assessment had been followed. In this case the Supreme Court of Iowa said, however, that "the irregularity or defect which, under this section (section 479 of the Code), can be disregarded, must, we think, be a mere error or omission to do something which in no manner affects the jurisdiction of the city."

The other cases to which our attention is directed contain no utterances, so far as we have been able to ascertain, that are pertinent to the case in hand. Considering the questions actually adjudicated in the cases to which we have referred, we are of opinion that they would not warrant us in holding that the city of Davenport, by virtue of the provisions contained in sections 478 and 479 of the Code of 1873, as construed by the Supreme Court of the state of Iowa, can enforce a charge against abutting property owners for a street improvement, where the work of improving a street is done under an utterly void contract. We feel constrained to hold that the making of a valid contract for the doing of such work is a jurisdictional prerequisite to the establishment of a charge against abutting property for the cost of the improvement. The laws of

the state, as well as the ordinances of the city to which we have already referred, clearly contemplate that such work shall always be done in pursuance of a contract, and no step in the course of the proceeding to charge abutting property owners with the cost of such work would seem to be more necessary for their protection.

The defendants further contend that, irrespective of other defenses, the decree which was rendered in the suit which they formerly brought against the city of Davenport to enjoin the prosecution of the work and the collection of the assessment of February 3, 1897, operates as a bar to this action. This leads us to inquire what issue or issues were involved in the former action. As we view the bill of complaint in that case, the defendants challenged the right of the city to charge the cost of the proposed improvement against them or their property upon any ground, provided the work was proceeded with under the contract that had been entered into with the Flick & Johnson Construction Company. They asserted not only that the contract with that company was one which the city had no power to make, and that it was on that account void, but, as a corollary from his proposition, that, if the work was done under that contract, the doing of the work would not operate to create a lien against their property, or a personal liability against them. They accordingly prayed that the prosecution of the work might be enjoined to prevent the possible assertion of a lien against their property for its cost. The bill was in its essence one to prevent a cloud being cast on their title. On no other ground than that of avoiding a cloud upon the title to their property which might be created if the work was done as proposed were they entitled to seek relief in a court of equity. It is true that the contention in the former suit was principally with reference to the validity of the contract with the Flick & Johnson Construction Company, but the decision of that question was only important, so far as the defendants were concerned, in that it determined the other question in which they were vitally interested—whether, if the work was done under that contract, the cost thereof could be charged as a lien against their property. We feel constrained to hold, therefore, that the fundamental issue which was presented by the former action was whether the defendants' property could be charged with the cost of the improvement if the city proceeded with it in the proposed manner. This issue was decided in favor of the defendants and adversely to the city.

Such being the broad issue that was tendered by the bill in the former case, why is it not true that the decree which was rendered in that case is a bar to the present suit? Counsel for the city say that it did not urge in that case the right to recover the cost of the improvement in virtue of sections 478 and 479 of the Code of Iowa of 1873, and that its right of recovery under those sections is a question which remains open and undetermined. But if it be true, as now contended, that, notwithstanding the invalidity of the contract in question, the city was entitled to collect a proper proportion of the cost of the improvement out of the defendants' property, and to have it charged with a lien therefor because the defect in the contract was a mere informality or irregularity in matters of procedure, which might be ignored, why was it not the duty of the city to have pleaded that fact

as a defense against the relief sought in the former action? We think that, if the latter theory is sound, the city had a perfect defense to the former action, and should have pleaded it, for, if sections 478 and 479, supra, gave the city the right to collect out of the defendants' property its proper proportion of the cost of the work, although it was not done under a valid contract, then the defendants' bill contained no allegations entitling them to such equitable relief as was prayed for and afterwards granted, since the prosecution of the work would have created no cloud on their title of which they could well complain. No chancellor, we think, would have granted an injunction against the prosecution of the work if it had been made to appear that the action taken by the city had been so far in accordance with law that it would, in any event, be entitled to recover the cost of the work in virtue of the provisions of sections 478 and 479 of the Code.

It is a well-settled doctrine, at least in the federal courts, that a person who seeks to enforce a demand of any kind by a suit must allege all of the grounds that entitle him to the relief sought, because, if he fails to recover on one ground, the law will not permit him, after such failure, to obtain the same relief against the same party on some other ground which might have been advanced in the first action. A like rule applies to the defendant who is proceeded against. He should take advantage of all of his defenses, since the law will not allow him to test the merits of one defense, and, if defeated, interpose another. A judgment rendered against him establishes conclusively that he has no defense to the demand. The rule in question was once tersely stated by this court in the following language in the case of Board of Commissioners of Lake County v. Platt, 25 C. C. A. 87, 91, 79 Fed. 567:

"In an action between the same parties, or those in privity with them, upon the same claim or demand, a judgment upon the merits is conclusive not only as to every matter offered, but as to every admissible matter which might have been offered to sustain or defeat the claim or demand."

See, also, to the same effect, Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Southern Minnesota Railway Extension Co. v. St. Paul & S. C. R. Co., 5 C. C. A. 249, 55 Fed. 690; Beloit v. Morgan, 7 Wall. 619, 621, 622, 19 L. Ed. 205; Hubbell v. United States, 171 U. S. 203, 18 Sup. Ct. 828, 43 L. Ed. 136; Southern Pacific Railroad v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Hardwick v. Young (Ky.) 62 S. W. 10.

In order that a person may be precluded from alleging certain facts as a ground of recovery or relief, it is not always necessary that they shall have been pleaded as a ground of recovery or defense in some other action between the same parties, and expressly declared to be insufficient to warrant a recovery or sustain a defense. It is sufficient if it appears that the party seeking to avail himself of such facts as a ground of recovery has had an opportunity to plead them in the former action as a defense thereto, and that they might have been pleaded and considered as a defense to the former action. Applying this doctrine to the case in hand, we are of opinion that the decree in the former suit is a bar to a recovery in the present action. The city had an undoubted right to plead, in opposition to a recovery in the former suit, the same facts on account of which it seeks a recovery in the present action,

and if they were in fact of such a nature as entitles it to a judgment against the defendants in the present suit for the cost of the improvement, then they would have precluded a recovery by the defendants in the former action, in that they would have shown that in that suit the defendants were not entitled to equitable relief. We conclude, therefore, that within the doctrine heretofore announced the decree in the former case estops the city from recovering against the defendants on a ground which, if it was ever tenable, might have been successfully pleaded as a defense to the former action.

The defendants, in connection with their answer, filed a cross-bill, which is in the nature of a bill of peace, wherein they pray that the city may be now enjoined from asserting any further claim against them on account of the work done and materials furnished in improving the street or road through their property, and from bringing any further actions to enforce a claim of that nature. Nothing was said concerning the cross-bill on the oral argument, and very little is said with respect to it in the brief. In view of this fact, and in view also of what has already been said concerning the right of the city to enforce the claim in question, we think that it is wholly unnecessary, and would be a work of supererogation, to grant any affirmative relief on the cross-bill.

The order of this court will be, for the reasons heretofore stated, that the decree of the Circuit Court be, and the same is hereby, reversed and annulled, and that the bill which is filed by the city be, and the same is hereby, dismissed, at its cost.

The appeal taken by the city in case No. 1,990 is also dismissed, at its cost.

HOOK, Circuit Judge (dissenting). It is conceded that the city of Davenport had ample power to improve the public highway and to assess the cost against the abutting property. It is also conceded that with one exception every requisite step in the proceedings from the initial resolution to the final completion of the improvement and the levy of the special assessment was literally and faithfully complied with. The single exception was that there was omitted from the contract a provision that the contractors should look exclusively to the special assessments for their compensation. In other words, the city absolutely obligated itself to pay the cost of the work. The indebtedness of the city thus attempted to be created was beyond the constitutional limit, and for that reason the Supreme Court of Iowa held, in a suit by the property owners, that the contract was void, and consequently that the special assessments based thereon were likewise void. Allen v. City of Davenport, 107 Iowa, 90, 77 N. W. 532. Subsequently the suit now before us was brought by the city against the property owners to recover and to have charged upon their property not the invalid assessments, but the actual value of the work and materials employed in the improvement. It was brought under those provisions of an Iowa statute which authorize such a recovery in case of a "defect" in the proceedings, which defeats the validity of the special assessments. Such a suit may be maintained by either the city or the contractor (Burlington v. Quick, 47 Iowa, 222), and it is to be especially

observed that it proceeds upon the theory that the assessments are void, and do not constitute the measure, or even an evidence, of the amount of recovery.

In substance, the opinion of a majority of this court is that the word "defect" in the Iowa law means a "mere informality or irregularity," but that a failure to make a valid contract is incurable; that the letting of the improvement on valid contract was a requirement of state statute, and therefore jurisdictional. The controlling question is whether the failure to make a valid contract is a defect within the meaning of that term as employed in the statute authorizing a suit to charge the property with the value of the work and materials after the special assessments have been declared invalid.

It is said in the foregoing opinion that a valid contract is a jurisdictional requirement. Whether a particular step in tax proceedings is jurisdictional, and, if not taken, is therefore beyond the reach of curative process, depends upon a consideration of the powers of the body whose authority is in question. The omissions which the Legislature may cure or authorize to be cured may be, in the absence of such authority, wholly beyond the power of the municipal authorities to remedy. It is not of infrequent occurrence that power to make public improvements and to assess the cost thereof upon property within defined taxing districts is conferred upon cities in very general terms, and that to them is delegated the duty of prescribing by ordinance the details of the procedure. In other cases the Legislature itself prescribes the course to be followed by the municipal authorities. But, whatever detail of procedure the Legislature could have dispensed with in the first instance, it may dispense with by a supplemental or curative law. And so of the power of the municipal authorities. And this suggests the test of a jurisdictional defect and of the validity of a curative proceeding. It may be conceded that the city of Davenport could not, without legislative authority, have dispensed with the letting of the work on valid contract, as that was one of the steps prescribed in the state law. But it is equally true that the making of such a contract is not a jurisdictional feature of the tax proceedings when tested by the power of the Legislature itself. It cannot be denied that the Legislature had power to authorize street improvements to be made without contract, and to provide that the value thereof be ascertained, and charged upon the abutting property by judicial proceedings. And, if it could have done that in the first instance, it may with equal right empower a city to accomplish the same result after a contract has been annulled and an attempt to levy special assessments thereunder has proved abortive. In Clinton v. Walliker, 98 Iowa, 655, 68 N. W. 431, it was said: "It has many times been held by this court that it is within the power of the Legislature to legalize any defect in proceedings of this kind if the defect or omission or want of compliance is such that it might have been dispensed with by a prior statute." An interesting illustration of this doctrine may be found in Richman v. Supervisors, 77 Iowa, 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am.

St. Rep. 308. In this case the supervisors had constructed a levee, and assessed the cost thereof against certain lands supposed to be benefited. The proceedings were held to be void (Richman v. Sup'rs Muscatine Co., 70 Iowa, 627, 26 N. W. 24), because a petition had not been filed, signed by a majority of the residents on adjacent lands as required by law. Afterwards a curative act was passed by the Legislature declaring the levee to be a lawful structure, and authorizing the supervisors to proceed anew to ascertain the amount of the cost, and to reassess the same against the lands in proportion to the benefit received. Appropriate provision was made for a hearing of the landholders. It was held that in the passage of the law originally authorizing the proceedings the filing of a petition might have been omitted, and that, therefore, the curative act and proceedings thereunder were valid.

The requirement of a valid contract may be jurisdictional in the sense that it is mandatory upon the city authorities—in the sense that, being prescribed by the state law, the city cannot lawfully dispense with it; but it is not jurisdictional where the question is that of the power of the Legislature and the interpretation of a state statute. The authority for the proceedings before us on this appeal is found in an act of the Legislature and is not dependent upon a city ordinance. And the real question is whether the Legislature intended to include the omission to make a valid contract within the term "defect" as used in the curative statute. That that body was not averse to intrusting such comprehensive power to municipal authorities is shown by another law of Iowa (section 834, McClain's Code), whereby certain cities are empowered to even order the work anew and relevy the special assessments where those originally levied are declared invalid by reason of an "alleged nonconformity with any law." A curative statute may, in the absence of constitutional inhibition, be retrospective or it may be prospective in its operation, and thus supplement and accompany existing laws on the subject of municipal improvements. The law under consideration is of the latter character. It was designed to prevent the escape of property from liability for its just and equitable proportion of the cost of a public improvement which a city had the general power to make and did make in good faith.

As was said in Burlington v. Quick, 47 Iowa, 222:

"The statute is broad, equitable, and remedial, and should not receive a narrow or strained construction. On the contrary, it should be so construed as to carry out the object, intent, and spirit the General Assembly evidently had in view in its enactment. If the improvement is such as the city is authorized to make according to the true intent of the law, then all errors and irregularities should be disregarded, and a recovery permitted for the proper proportion of the value of the work from the abutting property owner."

And as was said in Cooley on Taxation, 309, note:

"The cases under the Iowa statute go farther, we think, than any others in sanctioning broad powers in the Legislature to cure defects."

I am unable to perceive any sufficient reason for the restricted meaning given to the term "defect," or for the narrow interpretation of the Iowa statute under which this suit was instituted. It

is true that a state law required the letting of the work on contract. But it is also true that the same law prescribed that the contract should be let (a) upon sealed proposals, (b) after 10 days' public notice, (c) in at least two newspapers, (d) the notice to state as nearly as practicable the extent of the work, (e) the kind of materials, (f) when the work shall be done, (g) and when the proposals will be acted on. Logically, the opinion of the court leads to the conclusion that a failure to strictly comply with any one of these requirements would place the assessments thereby rendered invalid beyond the reach of the curative statute. To this I cannot assent.

In Coggeshall v. Des Moines, 78 Iowa, 235, 41 N. W. 617, 42 N. W. 650, the special assessments were declared invalid because the notice inviting proposals did not specify the kind or character of the materials with which the improvement should be made, the recital being that the pavement was to be a modern one, and then in use   In Osburn v. Lyons, 104 Iowa, 160, 73 N. W. 650, the special assessments were held to be invalid for the reason that the contract was practically let without competition, there having been a substantial change in the time fixed in the published notice for the completion of the work. In each of these cases the Supreme Court of Iowa, without, however, determining the existence of any remaining liability of the property for the value of the improvements, expressly framed its decision so that such liability, if any, should not be said to have been adjudicated.

Gill v. Patton, 118 Iowa, 88, 91 N. W. 904. In this case an inferior court of competent jurisdiction had held the original assessments to be void because the notice for proposals did not state when the work should be done, or when the proposals would be acted upon. Thereafter the city council reassessed the cost of the improvement upon the abutting property under section 834, McClain's Code. The reassessment was upheld by the Supreme Court of that state. There is a striking analogy between this case and the one at bar. There was a failure to comply with statutory requirements. The assessments were adjudged to be void. Nevertheless reassessments for the same work by the city council were sustained under a statute which, in my opinion, is not broader or more liberal in its scope than the one under consideration.

It is also held in the foregoing opinion that the decree in the original suit brought by the property owners, and which resulted in the annulment of the contract and the special assessments, is a bar to the suit of the city to have the property charged with the value of the improvement; that the city should have presented its claim for this relief in the original suit. This conclusion seems to be directly contrary to an opinion of the Supreme Court of Iowa in this very litigation. After the original decision of that court invalidating the assessments, the city attempted in the trial court to ingraft on the proceedings the cause of action now before us. On the second appeal the Supreme Court reversed an order of the trial court allowing it to do so. Allen v. Davenport, 115 Iowa, 21, 87 N. W. 743. Among the reasons assigned, the Supreme Court

said that the cause of action was not in existence when the original
suit in equity was submitted; that "the remedy was in a new ac-
tion." The new action was thereupon brought, but this court now
says it was barred by the decree in the original suit. In my opin-
ion, the settled law is that a judgment of a court declaring special
assessments void is not a bar, and does not prevent a city from
employing its statutory power of reassessment. The right to re-
assess arises upon the ascertainment or judicial determination of
the invalidity of the first proceedings. It does not exist before.
In Gill v. Patton, supra, the court said, "And the prior adjudication
'in no way affected the reassessment." The same doctrine was
recognized in Osburn v. Lyons and Coggeshall v. Des Moines,
supra. In the latter case certain assessments were declared void
by the Supreme Court of Iowa because the city council did not
determine the character of the work in advance of the advertise-
ment for proposals—a failure to observe a statutory requirement,
as in this case. The city council reassessed the cost of the im-
provement. The new assessments came before the same court in
Tuttle v. Polk, 84 Iowa, 12, 50 N. W. 38. They were upheld, and
the court, in speaking of the previous judicial decisions, said: "It
will thus be seen that there can be no final adjudication so long as
the Legislature, by proper enactment, obviates the difficulty." In
Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443,
an assessment was held void as being imposed in violation of the
Constitution of the United States. But the court said:

"It should be observed that the decree did not relieve the abutting property
from liability for such amount as could be properly assessed against it. Its
legal effect, as we now adjudge, was only to prevent the enforcement of the
particular assessment in question. It left the village, in its discretion, to
take such steps as were within its power to take, either under existing stat-
utes or under any authority that might thereafter be conferred upon it, to
make a new assessment upon the plaintiff's abutting property for so much
of the expense of opening the street as was found upon due and proper inquiry
to be equal to the special benefits accruing to the property."

This language was referred to with approval in French v. Barber
Asphalt Paving Company, 181 U. S. 324–344, 21 Sup. Ct. 625, 45
L. Ed. 879.

In Mills v. Charleton, 29 Wis. 400, 9 Am. Rep. 578, the court said:

"The reassessment of a tax, the proceedings for the collection of which
have once failed, is not a reopening of the judgment by which such former
proceedings were declared invalid. Such judgment remains a perpetual stay
of the proceedings to enforce the first assessment, but it only affects that as-
sessment, and does not operate upon new proceedings subsequently taken to
reassess."

In Dillon on Municipal Corporations, section 814 (652) it is said:

"A reassessment under legislative authority may be made notwithstanding
a final decree of a court enjoining the municipal authorities from collecting
the first or original assessment."

The suit before us is essentially a proceeding in reassessment.
It is none the less so because the machinery of a court is employed
for the ascertainment of the amount of the charge. The city had
general power to cause the highway to be graded, curbed, and

paved. Under the law appellants' property was liable for the cost thereof. The improvement was made and the abutting property consequently benefited. The original assessments against the property were declared invalid, not because of want of power in the city, but because of a defective execution of its power; no more defective, however, than in the cases of Norwood v. Baker and Coggeshall v. Des Moines, supra. This condition afforded a proper basis for reassessment. To make the reassessment effective, the city instituted a suit, especially provided by the law for the purpose, for the ascertainment of the actual value of the improvement, and that the property benefited be charged with the amount so judicially ascertained.

The Supreme Court of Iowa has said that the cause of action now before us was not in existence when the original suit in equity of the property owners was submitted; that a new suit was the appropriate remedy for its enforcement. How could the city have properly presented this cause of action in that suit? It claimed that its proceedings were regular. The trial court so decided, but they were held invalid on appeal to the Supreme Court. When tax proceedings are attacked in court, must a city, in order to preserve its statutory power of reassessment, at once confess their invalidity? I do not think so.

Moreover, I am unable to escape the conviction that serious error lies in the suggestion of this court that the decree in the first case forever bars the city from asserting any further claim on account of the improvement, and from adopting any further proceedings in respect thereof. I believe it to be beyond the power of this court to accomplish such result.

In Mills v. Charleton, supra, the court, in speaking of the taxing power in connection with remedial and curative statutes, very properly said:

"It moves constantly forward to its object until that is accomplished, and, if turned aside by any obstacles or impediments, may return again and again to the same tax or assessment, until, the way being clear, the tax is paid or the assessment collected. Such is the force of this power, or of the sovereign body which exercises it, that it may remove all obstacles, and never cease to act until it has attained the appointed end for which it was delegated."

As was observed by Chief Justice Chase (Bank v. Fenno, 8 Wall. 548, 19 L. Ed. 482), "The judicial cannot prescribe to the legislative departments of the government limitations upon the exercise of its acknowledged powers."